[No. 27092. Department Two. August 2, 1938.]

LLOYD A. BRIGGS, *Respondent*, v. OSCAR E. MADISON
*et al., Defendants*, CAMDEN FIRE INSURANCE
ASSOCIATION, *Appellants*.[1]

*J. E. Stewart* and *Clarke & Clarke,* for appellant.

*Sam L. Levinson, Jay Friedman,* and *A. P. Wilson,*
for respondent.

MILLARD, J.—In July, 1936, Oscar E. Madison pur-
chased from Lloyd A. Briggs a house owned by the

[1]Reported in 82 P. (2d) 113.

latter situated in the Quinault national forest, a government reservation. A consideration of seven hundred dollars was recited in the bill of sale executed by Briggs transferring the house to Madison, of which purchase price Madison, in fact, paid only five dollars, which was received by Briggs from Madison at the time of the execution of the bill of sale. It was necessary that the transfer of this property be by bill of sale instead of by deed, because the house was on government land.

In January, 1937, Madison borrowed from the Bank of Hoquiam (now the Hoquiam Branch of the Peoples Bank and Trust Company) sixty-five dollars, to secure the payment of which the borrower gave to the lender a chattel mortgage on the property. At that time, Madison insured the house in the amount of one thousand dollars and the contents of the house in the amount of two hundred dollars with the Camden Fire Insurance Association. In this fire insurance policy, Oscar Madison is the named insured. The policy contains a loss payable clause in favor of the mortgagee bank. Subsequently, Madison borrowed sixty dollars additional from the bank. The insurance policy provides, in part, as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership . . . or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage . . ."

The following statements of fact appear in the policy as warranties of the insured:

"TITLE:  The title to the insured property is in name of *Oscar Madison—located on leased ground.*

"ENCUMBRANCE:  No encumbrance on land except *$65.00.* No encumbrance on personal property except· *none.* Encumbrance is not past due except *No exceptions.* Property is not in litigation or dispute except *No exceptions.*"

February 6, 1937, Briggs instituted an action against Madison, alleging that the bill of sale which recited a consideration of seven hundred dollars was procured through fraud and for a consideration of five dollars, and prayed that the bill of sale be canceled and that the property be restored to the plaintiff. A few days later, the house and its contents were totally destroyed by fire. Thereafter, Briggs amended his complaint, setting up the destruction of the property, the existence of the insurance thereon, waived the tort committed by Madison in acquiring title to the property, and prayed for a money judgment against Madison for the balance due on the purchase price of the property and for other moneys obtained by Madison from the plaintiff. Trial of the cause to the court resulted in findings and judgment in favor of Briggs against Madison and wife in the amount of eight hundred and twenty dollars.

A writ of garnishment was issued on that judgment directed to Camden Fire Insurance Association, insurer of the property in question. By amended answer, the insurer set up that it had no property in its possession or under its control belonging to Madison and wife, and that it was not indebted to the principal defendants or either of them. In addition to its general denial, it set up the affirmative defenses that the Bank of Hoquiam and Oscar Madison were necessary parties to the action; that Madison misrepresented his

ownership in the property at the time of the issuance of the fire insurance policy; that Madison had no insurable interest in the property at the time of its destruction by fire; that he swore falsely in his proof of loss and in the oral examination taken under the policy provision; and that he accepted and cashed a draft in the sum of eleven dollars and sixty-four cents, the amount of the premium on the policy, in settlement of his claim.

Neither this nor any other pleading was served by the insurer upon Madison or upon the Bank of Hoquiam. The latter, however, filed a complaint in intervention. Madison, called by plaintiff as a witness, was cross-examined by counsel for the insurer. The only evidence introduced by the garnishee defendant (the insurer) was the transcript of the examination of Madison under the terms of the policy and the bank draft for the amount of the returned premium which was received and cashed by Madison. The plaintiff did not offer any evidence as to the loss on the personal property provision of the policy.

The trial court found that, at the time of the issuance of the fire insurance policy and at the time of the destruction of the property, Madison was the owner of the property and had an insurable interest therein. The court further found that Madison in all respects conformed to the conditions and requirements of the insurance contract; that he did not conceal or misrepresent, in writing or otherwise, any material fact or circumstance concerning the policy or his interest in the insured property, and that Madison did not swear falsely touching any matters relating to the insurance or the subject of the insurance either before or after the loss. The court also found there was due from the garnishee defendant to Madison, for the loss of the house, the sum of one thousand dollars, which was the

full amount of the policy, subject to the rights of Briggs under the writ of garnishment and to the interest of the Bank of Hoquiam, as provided in the policy of insurance. Judgment was entered accordingly. The Camden Fire Insurance Association has appealed.

In addition to its oral motion to make Madison a party to the garnishment proceeding, appellant alleged, as a part of one of its affirmative defenses, that Madison was a necessary party. Counsel for appellant urges error in the refusal of the trial court to make Madison a party; however, appellant's brief recites that appellant has no cause for complaint if Madison's rights are foreclosed by this proceeding so that he may not proceed further against appellant in any claim arising out of the fire insurance policy involved herein.

Madison was the defendant in the original action. He was called by respondent as a witness and testified at the time of the original hearing on the writ of garnishment. He was cross-examined by counsel for the appellant and identified the exhibits introduced in evidence by the appellant.

Madison is bound by the judgment on the writ of garnishment. Any payment made under that judgment may be successfully pleaded by appellant as a defense to any action which Madison might institute against appellant on the policy. A person may be bound by a decree though not a technical party to the action. One who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party. *American Bonding Co. v. Loeb*, 47 Wash. 447, 92 Pac. 282; *Woodruff v. Coate, ante* p. 201, 80 P. (2d) 555.

Counsel for appellant contend that Madison's failure to disclose to the appellant, at the time the fire insurance policy was issued, the fact that he had paid

only five dollars on the purchase price of the house, when the bill of sale recited a paid consideration of seven hundred dollars, constituted a breach of the warranty that the policy, unless otherwise provided by agreement endorsed thereon, shall be void if the interest of the insured be other than unconditional and sole ownership.

The record is bare of evidence of any concealment or misrepresentation concerning Madison's title to the property or with reference to any encumbrance on the property. The only encumbrance at the time the policy was issued was that of the Bank of Hoquiam, and this was correctly recited in the policy itself. The only ground of misrepresentation is that Madison was indebted to Briggs for the purchase price of the property at the time the policy was issued. The record does not disclose any inquiry was made of Madison concerning this indebtedness. Its existence may not be made the basis of any claimed misrepresentation.

The transfer by bill of sale was not void. Assuming that it was voidable by Briggs, Madison was, subject only to that right, the legal owner of the property as against all the world. This bill of sale or contract of purchase, whatever its designation, was not void, and the fact that grounds existed in favor of Briggs for having it set aside was not a matter with which the appellant had any legal concern. See 4 Couch Cycl. of Insurance Law, § 923.

In *Phoenix Ins. Co. v. Mitchell,* 67 Ill. 43, the insurer urged that, because the insured obtained title from his grandfather by fraud and the title was subsequently set aside in equity, the insured was not the sole owner within the meaning of the policy. The court said:

"The conveyance was not void, but only voidable at the election of the vendor, providing the right of disaffirmance was exercised within a reasonable time. Subject only to that right, McDougal was the legal

owner of the property as against all the world. If the deed had been void for fraud in the execution, different consequences would follow. But the conveyance not being void, and a legal title vesting in McDougal, the fact that grounds existed in favor of his vendor, for having it set aside in equity, did not make McDougal's title conditional as to the appellant, nor was it a matter with which the appellant had any legal concern. It cannot get rid of its contract of insurance by impeaching the mode by which the insured obtained the legal title to his property, or, in other words, by setting up fraud committed upon third parties."

Holding in *Hanover Fire Ins. Co. v. Nash*, 67 S. W. (2d) (Tex. Civ. App.) 452, that the stipulation in a fire insurance policy to the effect that the insured was the sole and unconditional owner did not purport that the insured had an indefeasible title, the court said:

"We need not inquire as to the effect, if any, of such alleged breach upon Mrs. Nash's title. Certainly it did not operate, ipso facto, to avoid the same and divest her title. If it be conceded that South could have successfully maintained an action to cancel and rescind his conveyance, nevertheless, until this was done Mrs. Nash held title to the estate in remainder. Her title was so completely vested in her that she could not be divested of it except in some manner prescribed by law. The stipulations in the policy relating to ownership 'do not import that insured can show an indefeasible title, free from defects and good against all persons, or even a valid legal title at all, and an outstanding naked legal title, or defects in the title or title deeds of insured, if he claims under a deed or other evidence of title purporting to invest him with an estate in fee simple, do not constitute a breach or avoid the insurance where the policy is conditioned on any of these statements.' *Miller v. Alliance Ins. Co.* (C. C.) 7 F. 649, 650; *Hough v. City Fire Ins. Co.*, 29 Conn. 20, 76 Am. Dec. 581; *East Texas Fire Ins. Co. v. Crawford* (Tex. Sup.) 16 S. W. 1068, 1069."

The bill of sale to Madison was properly executed

and delivered. The only contention of appellant goes to the payment of the entire consideration of seven hundred dollars recited in that bill of sale. The evidence adduced at the hearing in the main action between respondent and Madison is not before us. The trial court's findings of fact in that case cannot be changed here. The admissions or contentions of respondent may not be substituted for proof that Madison did not own the property at the time the policy was issued and at the time the property was destroyed by fire. Upon appellant was imposed the burden of proof that appellant did not own the property, a burden appellant did not sustain.

Counsel for appellant next contend that Madison violated the above-quoted policy provision by swearing falsely in proofs of loss and sworn examination under oath. Nothing has been called to our attention disclosing any false swearing in the proofs of loss. This assignment of error must be limited to the testimony of Madison in his oral examination under the terms of the policy. This testimony refers merely to the payment of the consideration and has nothing to do with the passage of title or the delivery of the bill of sale.

The testimony by Madison is to the effect that he paid the full purchase price of seven hundred dollars for the property. However convinced we may be that Madison testified falsely as to payment of the full amount of the purchase price, the record does not disclose that he testified falsely. What the facts were on which the court based its findings and judgment as to the amount due to respondent from Madison, we do not know. Appellant makes no contention that the proof of loss sets forth a false value on the property, nor does appellant insist that Madison's testimony was false as to the value of the property and the extent of the loss.

The above-quoted provision of the policy upon which appellant relies relates to false statements made in connection with proofs of loss and value of the property. It has nothing to do with the manner of obtaining title to the property or the payment of the purchase price of the property.

The rights of the insurer and the insured became fixed when the loss occurred. We agree with respondent that the rights of the appellant and Madison became fixed upon the happening of the loss, and the material point thereafter was the value of the property. If appellant could have established that Madison made a false statement as to his actual title to the property, at the time of the issuance of the policy, a different question than that before us would be presented. But any statement, whether true or false, respecting the consideration paid for the property has no bearing on the issue. Under the terms of the policy, there was no false swearing by Madison that could be successfully invoked to defeat the judgment obtained by the respondent.

Judgment is affirmed.

MAIN, BEALS, BLAKE, and ROBINSON, JJ., concur.