[No. 27039. Department Two. October 18, 1938.]

HENRY B. YOUNGQUIST, *Appellant,* v. MARY THOMAS, *Respondent.*[1]

*Little, Burgunder & Smith* and *Lew E. Flanders,* for appellant.

*Bernice Jonson* and *A. E. Jonson,* for respondent.

SIMPSON, J.—Plaintiff instituted this action for the purpose of obtaining possession of, and quieting title to, certain real property in King county. He alleged that he was the sole owner and entitled to possession of lots five and six, block sixteen, in Squire Park Addition' to Seattle, situated at 1901 and 1903 east Jefferson street, and that defendant was in possession thereof under claim of title.

In her answer, defendant denied the allegations of the complaint and then made a separate answer, the

'Reported in 83 P. (2d) 337.

pertinent parts of which are as follows:    That on or about July 8, 1930, she purchased the premises through one Don Campbell to be used as a home for herself and her two minor children, and since that date she has been the owner of the property described in plaintiff's complaint; that at the time of the purchase she was a widow, and had ten thousand dollars in cash left her by her deceased husband, but she was not versed in business matters and in truth and in fact had no knowledge of business dealings or real estate transfers and transactions; that she could not express herself clearly, and was wholly dependent upon the advice and assistance of others in business transactions, all of which Don Campbell well knew; that, prior to the purchase of the property, Don Campbell came to her in Aberdeen and introduced himself, representing that he was an honest and upright man, well-to-do, skilled in business dealings, and would purchase the property in question for defendant as a home for her and her children, and that he would deal honestly with defendant and she could rely upon him; and that he would protect her fully in the transaction and see to it that the papers were properly made out and her interests protected.

She further alleged that the representations made by Don Campbell were false, and made with intention to defraud her; that relying upon the representations made to her by Don Campbell, and without knowledge of the falsity thereof, she gave to him ten thousand dollars in various sums from time to time for the purchase of the property; and that about four thousand dollars of the money was used and invested by Don Campbell in the purchase and improvement of the property in question; and the plaintiff entrusted the handling of all the business transactions relating to the purchase of the premises to him.

Further, it was alleged that Don Campbell took de-

fendant's money, purchased the property for her, did not take the conveyance in her name, but wrongfully and fraudulently took the contract of conveyance in the name of the Cambridge Land Company, a corporation, which had been incorporated by Campbell and another person in their scheme to defraud this defendant of her money.

In addition, the defendant contended that Don Campbell, in the scheme to defraud her, caused the purchase contract for the property to be assigned to one Eva Barquist, and thereafter, in the furtherance of the scheme to defraud, he and Eva Barquist caused the purchase contract to be assigned to the plaintiff, Henry B. Youngquist, and that during all of the time mentioned defendant was in open and peaceful possession of the premises, and occupied it as her home.

In his reply, plaintiff generally denied the assertions contained in the answer, and then made the following allegations: That the property was purchased by plaintiff from Eva Barquist and a deed received from her, and that Eva Barquist had, shortly before such transaction, purchased the same from the Cambridge Land Company, a corporation; that, almost immediately after the transactions just referred to, defendant Mary Thomas commenced an action in the superior court for King county entitled Mary J. Thomas v. Cambridge Land Company, No. 274974, and in the complaint in that action plaintiff alleged that the conveyances from the Cambridge Land Company to Barquist, and from Barquist to plaintiff herein, were fraudulent and without proper consideration, and that the property mentioned really belonged to the corporation.

The reply further stated that the defendant, Mary Thomas, petitioned the court for a receiver, and prayed that the receiver be authorized to bring suit to set aside the conveyances and restore the property to the

Cambridge Land Company; that a receiver was appointed by the court and he thereafter instituted an action entitled Earle, Receiver, v. Campbell, *et al.,* No. 276397; that the complaint in such action prayed that the conveyance to the plaintiff herein be set aside as fraudulent, and that the property be restored to the Cambridge Land Company or to the receiver; that plaintiff herein was a party defendant in that action, and Mary Thomas was present at the trial and testified that the Cambridge Land Company was the owner of the property, and she had loaned money to Don Campbell for the purpose of a further loan by him to the Cambridge Land Company; that, when the trial was concluded, the court rendered a judgment to the effect that plaintiff, Youngquist, was a *bona fide* purchaser of the property for value and was its owner, but that part of the consideration for the property paid by plaintiff Youngquist to the Cambridge Land Company had not been paid to the corporation by its president, Don Campbell, and a judgment was rendered in favor of the receiver against Don Campbell.

The present case was tried to the court, and judgment entered in favor of defendant quieting title in her to the property in question. This appeal followed.

The evidence favorable to respondent may be summarized as follows: Respondent came to the United States in 1907, married, and lived with her family at Aberdeen until she moved to Seattle in 1932. During the month of March, 1929, her husband died, leaving her insurance proceeds which amounted to ten thousand dollars. She had no business experience and could hardly speak or understand the English language. September 5, 1929, Don Campbell met and became acquainted with her in the city of Aberdeen, and secured her complete confidence. After a short period of time, Campbell induced respondent to loan him five

hundred dollars for the purpose of paying taxes on some Seattle property that he claimed he owned. This was followed by other loans to Campbell until the amounts totaled two thousand dollars. At that time, respondent said to Campbell:

"Listen you won't give me any paper. If something happened to you, you live in Seattle. I am in Aberdeen. You have a car accident or something, I couldn't prove I got any money here. People don't know me here."

Don Campbell answered: "All right, if you want the paper I will give it to you."

Shortly afterwards, Campbell told the respondent that he would show her a very good buy, and took her to Nineteenth and Jefferson, where he showed her the property in question. At that time, he said, "I am going to buy it for your home." On the same day, Campbell and respondent went to the office of an attorney in Seattle, where she was given a promissory note payable to her in the sum of thirty-five hundred dollars, due three years after date of June 12, 1930, which note drew interest at the rate of six per cent per annum. At the same time, she was given one hundred forty shares of stock in a corporation known as East Cherry Investment Company. Respondent testified that she thought the documents given to her at that time were deeds, or papers which showed that she owned the property. In July, 1930, the Cambridge Land Company was organized, and respondent was given eighteen hundred shares in that company in lieu of the East Cherry Investment Company stock.

The real estate was purchased on contract in the name of the Cambridge Land Company. The building on the property was improved and remodeled so that it could be used as an apartment house. During the period of remodeling, Campbell secured large sums of

money from respondent for the avowed purpose of improving her property. The total amounts secured by Campbell from respondent amounted to an approximate total of ten thousand dollars.

In 1932, respondent moved from Aberdeen to the property, and stayed there until June 6, 1935, when she was ejected in an action instituted by appellant. Later, that case was decided in respondent's favor.

In order to connect appellant with the transaction, it was shown that he, Miss Barquist, and Don Campbell were on friendly and intimate terms, and visited at the home of respondent together; that, after the action of the receiver was decided in his favor, appellant had Don Campbell serve respondent with a notice, and afterwards allowed Campbell to live on the property and to do considerable work in making repairs; and that appellant, after securing the assignment of the contract, visited respondent and told her he had a deed to the real property in question here. Respondent asked him how he got the deed, and he said, "You haven't got enough stock."

After respondent took possession of the property, she proceeded to care for it and to rent the apartments. For some time, she collected the rents and gave them to Don Campbell to pay the water bills and to make payments on the contract of purchase. Some time in February, 1934, she saw a letter addressed to Campbell from Fisken and Company, the representatives of the vendors, and from the contents discovered that the payments on the contract had not been made. From that time, respondent made the payments herself.

In September, 1934, W. E. Campbell, father of Don Campbell, told respondent to go to Fisken & Company and ask about the deed to the property. Upon

going to that company, she was told that the contract of purchase had been assigned to a Miss Eva Barquist. This was the first information respondent had received to the effect that the title was not in her name.

After being advised concerning the condition of the title, respondent consulted Mr. Herbert Little, a member of the Seattle bar. Mr. Little then instituted an action for Mrs. Thomas in the superior court for King county, entitled Mary J. Thomas v. Cambridge Land Company, a corporation; Don Campbell and Ida Campbell, his wife. The pertinent parts of that complaint recited:

That the Cambridge Land Company, a corporation, was managed and controlled by Don Campbell, its president and manager, and he was in full and complete charge of its books, records, and affairs, and the principal stockholder thereof; that the Cambridge Land Company was the fee owner, subject to encumbrances of record, of the property known as lots five and six, block sixteen, Squire Park Addition to Seattle; that Don Campbell in the year 1929 represented to plaintiff that the Cambridge Land Company was in need of money in connection with its properties, and that, if the plaintiff would loan money from time to time for such purposes, he and the defendant Cambridge Land Company would fully protect and secure her by giving her a first and prior claim against the assets of the company; that the plaintiff had no experience in business affairs, did not speak English readily, did not understand legal or business details, all of which was known to defendant Campbell; and that plaintiff, relying upon the representations and assurances of the defendant, loaned to Don Campbell and the Cambridge Land Company considerable sums of money aggregating as follows, to-wit:

"During 1929 and up to and including
   June 12, 1930...................... $3500.00
From June 13, 1930 to November 9, 1931..  4840.00
From November 10, 1931 to April ·5, 1932..    470.00
From April 6, 1932 to January 16, 1933....    207.50
From January 17, 1933 to Novem-
   ber 28, 1933.........................     207.00

Aggregating ........................ $9224.50"

There were further allegations in that complaint which recited that the three items first mentioned above were evidenced by promissory notes, one a thirty-five hundred dollar note given to the plaintiff on June 12, 1930, another for $4,840 on November 9, 1931, and a third for $470, dated April 5, 1932, all being signed by Don Campbell; that July 7, 1930, Campbell assigned to her as collateral security for the note dated June 12, 1930, eighteen hundred shares of the capital stock of the Cambridge Land Company; and that the moneys loaned to Don Campbell were in fact loaned to and for the Cambridge Land Company. It was then alleged that plaintiff, being ignorant of all legal and business terms and having complete confidence in the honesty and integrity of Don Campbell, accepted the notes and stock in the belief that she was fully secured and protected, and was lulled into a false sense of security, and that she did not find out the true state of affairs until she had consulted an attorney.

Another allegation was to the effect that the conveyance, or attempted conveyance, to Eva M. Barquist constituted a fraudulent and unlawful preference, and that it was necessary to have a receiver appointed for the Cambridge Land Company in order to protect the interest of the plaintiff.

The complaint was signed and sworn to by Mary J. Thomas, respondent in this case, on the thirteenth day of September, 1934. She also signed an affidavit which

was used in the case, dated September 27, 1934, containing the following statement:

"Affiant further states that all, or substantially all of the money borrowed by Don Campbell from the affiant was borrowed for the use and benefit, and on behalf of the Cambridge Land Company, and that affiant can trace all, or substantially all of the money so loaned by her into the properties owned by the defendant Cambridge Land Company, and that from time to time the defendant Don Campbell acting for and on behalf of the Cambridge Land Company has requested the plaintiff to loan money to him for the Cambridge Land Company to pay for taxes and assessments, utility charges, and to pay for repairs, and to pay other items in connection with the security of the property of the defendant Cambridge Land Company, and that pursuant to such requests the plaintiff has loaned to all of said defendants vast sums of money which are included within the items sued upon in the complaint herein, and that the defendant Don Campbell has admitted to plaintiff on divers occasions that the money loaned by her was being applied to the use and benefit of the defendant Cambridge Land Company."

A hearing was had upon the application for the appointment of a receiver, and Dan Earle was appointed as receiver of the Cambridge Land Company. He then made a motion asking for authority to bring an action against Don Campbell and wife, Eva M. Barquist, and Henry B. Youngquist (appellant in this case). The motion was granted, and the receiver instituted an action against the parties last named.

The receiver's complaint contained practically the same allegations as set out in the case of Mary Thomas v. Don Campbell, *et al.* It contained a prayer asking that the assignments, conveyances, or other documents executed by the corporation to the defendant Barquist, and the assignments, conveyances, or other documents to the property in question from the defendant Barquist to the defendant Henry B. Youngquist be held

to be void and of no effect, and that the same be cancelled of record; and further that all of the property be declared to be the property of the Cambridge Land Company.

The trial was had, and a decree entered to the following effect:

"Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover of and from the defendant Don Campbell and the community composed of Don Campbell and Jane Doe Campbell, his wife a judgment in the full and just sum of $700, with interest thereon at the legal rate from the 30th day of August, 1934, until paid, and for costs and disbursements herein to be taxed by the clerk of the above entitled court.

"AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the complaint of the plaintiff against the said defendants Eva Barquist and Henry B. Youngquist be and the same hereby is dismissed and the said defendants hereby discharged and they are granted costs against the plaintiff."

After the judgment was entered, the receiver made a final report asking that he be allowed, as receiver's and attorney's fees, the judgment of seven hundred dollars rendered against Don Campbell. The court approved the report and made an order giving to the receiver and his attorney the judgment against Campbell and wife. The record shows a satisfaction of that judgment was filed March 17, 1938.

Appellant contends that the action instituted for the appointment of a receiver, and the subsequent suit by him to set aside the conveyance to the appellant, was an adjudication not only of all the questions involved therein, but also all that could have been raised, and is *res adjudicata* of the allegations contained in the present action.

We are of the opinion that appellant's contention must be upheld. Respondent sought in the former

actions to have the Barquist and Youngquist conveyances declared fraudulent. She was unsuccessful then and cannot again litigate that question.

The case brought by the receiver was begun at the instance of respondent. She was bound by the judgment in that case for the reason that she, in privity with the receiver, was present at the trial, and took a part therein when her attorney testified.

In the case of *Douthitt v. MacCulsky*, 11 Wash. 601, 40 Pac. 186, actions were instituted to foreclose liens, and the wife of the defendant was not made a party to some of the actions. The decree recited that the property belonged to her husband. In a subsequent action the former suit was held conclusive and binding upon her. The court said:

"Admitting the general rule to be that no one can be conclusively bound by a judgment or decree unless he be a party to the suit or be in privity with the party, we think this rule does not require a person to become a technical party to the record in order to be bound and concluded by the result of the suit. If he be interested in the subject matter of the suit and exercise the right of participating in the defense, he cannot afterwards be heard to contend that he is not bound and concluded by the judgment and decree to the same extent that he would have been if made a technical party to the proceeding.

" 'The law requires that there shall be an end of litigation, and, where a party has had a full and fair opportunity presented of making all the defenses at his command to an asserted right or claim, it is quite immaterial that he has elected to appear and defend in the name of another, who is a party of record, rather than cause himself to be made a co-defendant in the proceeding.' *Parr v. State*, 71 Md. 220 (17 Atl. 1020)."

"A person may be bound by a decree though not a technical party to the action. One who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the

judgment as fully as if he had been a party. *American Bonding Co. v. Loeb,* 47 Wash. 447, 92 Pac. 282; *Woodruff v. Coate, ante* p. 201, 80 P. (2d) 555." *Briggs v. Madison,* 195 Wash. 612, 82 P. (2d) 113.

See, also, *Shoemake v. Finlayson,* 22 Wash. 12, 60 Pac. 50; *Symons v. Hutchinson,* 119 Wash. 430, 205 Pac. 1057; *Large v. Shively,* 194 Wash. 608, 624, 82 P. (2d) 793; 34 C. J. 1009, § 1431.

In *Large v. Shively, supra,* this court approved the following statement in *Currier v. Perry,* 181 Wash. 565, 44 P. (2d) 184:

" 'The general doctrine is that the plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' "

The questions presented in the case at bar were litigated in the former proceedings, save only that one in which respondent contends she owned the property. That question could have been properly urged in her first action had she and her attorney seen fit so to do. The evidence in the record, and the similarity of the pleadings, especially with reference to the actions of the parties and the dates of the various transfers of property and loans of money, preclude respondent from contending that she did not understand what was being done for her interest in the former cases. She was represented by able counsel and had every opportunity to, and did, present her claims to the court in those actions.

Several errors have been urged by appellant, but the conclusion we have reached renders unnecessary a consideration of the remaining errors assigned.

The judgment is reversed, with instructions to enter

456

a judgment quieting title to the property in question in the appellant.

STEINERT, C. J., BEALS, GERAGHTY, and MILLARD, JJ., concur.

[Department Two.    March 6, 1939.]

PER CURIAM.—A petition was filed in this case praying for the recall of the remittitur for the purpose of amplifying the instructions to the superior court contained in the Departmental opinion.    The same was granted.

IT IS HEREBY ORDERED that the trial court enter judgment restoring possession of the real property in question to appellant, and this *per curiam* decision is made a part of, and shall be printed in connection with, the Departmental opinion in the above entitled case.