[No. 6435-9-II.   Division Two.   June 11, 1984.]

ARCHIE HACKLER, ET AL, *Appellants,* v. RONALD M. HACKLER, ET AL, *Respondents.*

*Ivan D. Johnson,* for appellants.

*Mark G. Honeywell,* for respondents.

WORSWICK, J.—Archie and Erika Hackler (the Hacklers) appeal a summary judgment which quieted title to a house in their former daughter–in–law, Gwynne Hackler.

On April 28, 1977, the Hacklers sold the house to their son Ron and his then wife, Gwynne. In September 1977, Ron and Gwynne reconveyed their interest to the Hacklers by quitclaim deed, but continued to live in the house and pay the taxes and mortgage. The marriage of Ron and Gwynne was dissolved in April 1979. At the dissolution trial, Ron testified that he and Gwynne owned the house, subject to a mortgage. Archie testified at the trial about the April 1977 conveyance to Ron and Gwynne, but did not mention the quitclaim deed. The trial court never learned of the quitclaim deed. It awarded the house to Gwynne.

In November 1981, the Hacklers recorded the quitclaim deed. They then brought this quiet title action against Ron and Gwynne contending that the deed had been lost before the dissolution action, but was found in November 1981.[1] Gwynne answered raising the defenses of res judicata, estoppel, waiver, laches and the statute of limitations. She also counterclaimed against the Hacklers and cross–claimed against Ron and his new wife, alleging slander of title.

---

[1] The Hacklers also named two nominal defendants: Frank Rayeski, a tenant in the house, and First Interstate Bank, the mortgagee.

The Hacklers moved for summary judgment and Gwynne moved to dismiss the complaint. The trial court denied the Hacklers' motion and granted Gwynne's motion.[2] In doing so, the court did not dispose of Gwynne's counterclaim and cross claim.

The Hacklers then purported to appeal the summary judgment order quieting title in Gwynne. While the appeal was pending, the trial court proceeded with Gwynne's remaining claims, allowing her to amend her answer to abandon slander of title and to substitute a bad faith claim. Gwynne moved for summary judgment against Ron and his wife and the Hacklers on this claim. The trial court granted the motion and awarded her attorney's fees.

Ron and his wife then appealed this second summary judgment order. The Hacklers filed an amended notice of appeal also seeking review of the second order. The entire matter was consolidated in one appeal. Nevertheless, neither Ron and his wife nor the Hacklers assigned error to the second order.[3]

The issues now before us are whether the trial court erred in barring the Hacklers from asserting title to the house, and whether the Hacklers and Ron and his wife are entitled to review of any issue on their appeal of the second order which awarded attorney's fees. We affirm.

Summary judgment should be granted if the pleadings, depositions, admissions, affidavits and all reasonable inferences that may be drawn therefrom show there is no genuine issue as to any material fact, and the moving party is entitled to judgment. *Olympic Fish Prods., Inc. v. Lloyd,*

---

[2]Although Gwynne moved to dismiss the complaint, the trial court apparently considered this a motion for judgment on the pleadings and treated the motion as one for summary judgment. CR 12(c); CR 56.

[3]The first summary judgment ordered was not appealable. The judgment does not expressly provide that it is final and that there is no just reason for delay. CR 54(b). Nevertheless, the clerk of this court consolidated the two summary judgment orders and invited appellants to file additional briefs discussing issues related to the award of attorney's fees. He also extended the time period for doing so. Appellants chose not to file another brief.

93 Wn.2d 596, 611 P.2d 737 (1980). A material fact is one on which the outcome of the litigation depends. *Jacobsen v. State,* 89 Wn.2d 104, 569 P.2d 1152 (1977). Although the record on the first summary judgment order reveals disputes as to some facts, there are no disputed facts that will avoid application of the dispositive legal principle, as will be seen. Summary judgment was therefore proper.

There is no dispute over the validity of the quitclaim deed in this case.[4] A quitclaim deed conveys all then existing legal and equitable rights of the grantor in the described property. *Security Sav. & Loan Ass'n v. Busch,* 84 Wn.2d 52, 523 P.2d 1188 (1974); RCW 64.04.050. Ron and Gwynne conveyed their interest in the house to the Hacklers when they delivered the quitclaim deed in September 1977. The dispute concerns whether the Hacklers are barred by collateral estoppel, waiver, equitable estoppel, or laches from asserting their title by that deed. We hold that they are barred by collateral estoppel.

Collateral estoppel applies if: (1) the issue decided in the prior adjudication was identical with the one presented in the action in question; (2) the prior adjudication ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted was a party or in privity with a party to the prior litigation; and (4) application of the doctrine does not work an injustice. *Dunlap v. Wild,* 22 Wn. App. 583, 591 P.2d 834 (1979). The dissolution action, which ended in a final judgment on the merits, decided the issue of title to the house. However, the Hacklers, who were not parties to the dissolution action, contend they were not in privity with a party either.

Privity denotes mutual or successive relationship to the same right or property. The binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right, the successor is then affected by the

---

[4]In her brief and at oral argument, Gwynne did contend the deed was not evidence that she and Ron intended to give the house to the Hacklers. However, Gwynne did not dispute the validity of the deed or its effect of passing title.

adjudication in the hands of the former owner. *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960). Where a party to an action assigns his interest in property before commencement of the action, the assignee is not regarded as in privity with the assignor so as to be affected by a judgment against the assignor in the subsequent action. 46 Am. Jur. 2d *Judgments* § 533 (1969). *See Coe v. Wormell,* 88 Wash. 119, 152 P. 716 (1915). Ron and Gwynne assigned their interest in the house to the Hacklers before the dissolution trial. Thus the Hacklers are correct in their assertion that collateral estoppel does not apply to them by reason of privity, as that concept is usually understood. This, however, is not the end of the matter, because there is an exception to the requirement that one be a party or in privity with a party to the prior litigation.

One who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party. *Bacon v. Gardner,* 38 Wn.2d 299, 229 P.2d 523 (1951); *Youngquist v. Thomas,* 196 Wash. 444, 83 P.2d 337 (1938); *Briggs v. Madison,* 195 Wash. 612, 82 P.2d 113 (1938); *Howard v. Mortensen,* 144 Wash. 661, 258 P. 853 (1927); *American Bonding Co. v. Loeb,* 47 Wash. 447, 92 P. 282 (1907); *Shoemake v. Finlayson,* 22 Wash. 12, 60 P. 50 (1900). At the dissolution trial, Archie testified as a witness for Ron, knowing that both Ron and Gwynne sought title to the house. He was, therefore, interested in the trial's results and aware of its object. The Hacklers made no attempt to intervene in the litigation pursuant to CR 24(b)(2), even in the face of Ron's testimony that he and Gwynne owned the house. Under these circumstances, we hold that the Hacklers are estopped to assert title to the house by the quitclaim deed.[5]

At oral argument, counsel for appellants contended

---

[5]We do not reach the issue of whether the Hacklers are also barred by equitable estoppel, waiver, and laches from asserting title to the house by the quitclaim deed.

that the trial court erred in awarding attorney's fees on Gwynne's bad faith claim. We decline to review this alleged error. We will not consider matters to which no error has been assigned. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 593 P.2d 156 (1979). Neither will we review issues not supported by argument or citation of authority unless they are well taken on their face. *Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 590 P.2d 816 (1979). Appellants neither assigned error to the summary judgment order awarding attorney's fees nor argued the matter in their brief. Consequently, the order stands unchallenged. *State v. Fortun*, 94 Wn.2d 754, 626 P.2d 504 (1980).[6]

Affirmed.

PETRICH, C.J., and PETRIE, J., concur.

Reconsideration denied July 24, 1984.

Review denied by Supreme Court October 19, 1984.

---

[6]At oral argument, counsel for appellants claimed his assignment of error to the first summary judgment order, *i.e.*, quieting title in Gwynne, was sufficient to present the second order for review. We disagree. On appeal from only part of a judgment, the court may not review rulings which do not affect the part appealed from. *Cook v. Commellini*, 200 Wash. 268, 93 P.2d 441 (1939). The order concerning title to the house does not affect the order concerning attorney's fees.